WINDSOR CONSTRUCTION CORPORATION, ET AL *v.*
BENJAMIN KOLKER
[No. 64, October Term, 1941.]

114

*Decided December 4, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Louis J. Jira* with whom was *John S. Mahle* on the brief for the appellants.

*William Saxon* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City extending a decree in personam against complainants and in favor of appellee for $4,675.45, with interest from January 7, 1941.

On July 27, 1938, appellants executed unto appellee a mortgage for $7,280, payable in weekly sums of $100 per week, beginning on the first of August, 1938, with interest thereon payable at six per centum per annum, payable semi-annually, accounting from the date of the mort-

gage, and with the right to mortgagors to prepay said mortgage indebtedness at any time prior to default or maturity, the interest on said prepayments to cease when paid. The mortgage was secured by two lots of ground known as 2900, 2902, 2904, 2906 Silver Hill Avenue, and upon 5534, 5536, 5538, 5540, 5542 and 5544 Gwynn Oak Avenue in Baltimore, Maryland. Default having occurred in the terms and conditions of said mortgage, appellee on June 9, 1939, filed the same for foreclosure, and on the same date the court filed its decree appointing Joseph Fax, trustee to make sale. Four days later, Fax, the Trustee, petitioned to the court that he had been appointed trustee to make sale of the properties on Silver Hill Avenue, the other property having been sold under first mortgages; that he had filed his bond which had been approved by the clerk, and under the terms of the mortgage filed in the cause the plaintiff was entitled to immediate possession of the property mentioned therein after default had occurred in the covenants; that two first mortgages on the properties were held by American National Building and Loan Association, which were in default and the petitioner desired to collect the rents accruing out of said properties and to apply the same towards the payments required by the covenants of said two first mortgages, the expenses of managing said property and the surplus, if any, to the mortgage held by the plaintiff in this case.

Upon that petition the court on June 13, 1939, passed its order granting the relief prayed, and further ordering "that the tenants occupying said properties pay the rent to said Joseph Fax, trustee, or his agent, and no one else."

From that time on to-wit, June 13, 1939, until December 6, 1940, the said Joseph Fax, as trustee, managed the properties and collected the rents amounting to $5,691.50, while his total disbursements were $5,836.54. The auditor's account, therefore, allows the whole $5,836.54 to the trustee and shows a deficiency in the sum of $4,820.49, for which sum a motion for decree in personam was filed by the appellee. This motion was answered by the de-

fendants who charged generally that the auditor's account did not correctly show the balance of money due the complainants by the defendants; that the trustee had collected in rentals the sum of $5,691.50, and his expenses as therein related amounted to $5,836.54, and if the court disallowed to the trustee such items as were not proper the amount found due by the auditor would be materially reduced. In paragraph 12 of their answer, the defendants stated that they did not "oppose the appointment of a trustee in these proceedings, and the authority of this court granted him to manage the properties, for the reason that they were deluded into the belief, by the actions of the complainant, that such action was to the best advantage, benefit and profit of all concerned; and, therefore, if a loss has resulted, the same should· not be charged to these defendants, but the same should be absorbed by the complainant, inasmuch as it appears that the loss sustained was due to its management of the properties, over which management these defendants had no control and no say therein."

It is appellants' position that the decree in personam against them for the alleged deficiency as stated in the auditor's account is made up of many items of expense for which they did not make themselves liable by covenants contained in the foreclosed mortgage.

Under the decisions of this State, no doubt exists that after default (and before default in cases of leasehold property) the mortgagee is entitled to possession. *Jamieson v. Bruce*, 6 Gill & J. 72, 26 Am. Dec. 557; *McGuire v. Benoit*, 33 Md. 181, 186; *Bank of Commerce v. Lanahan*, 45 Md. 396, 407; *Chelton v. Green*, 65 Md. 272, 4 A. 271; *Deakins v. Rex*, 60 Md. 593; *Commercial Bldg. Ass'n v. Robinson*, 90 Md. 615, 618, 45 A. 449; *Gibbs v. Didier*, 125 Md. 486, 492, 94 A. 100, *Ann. Cas.* 1916E, 833; *Griffin v. Wilmer*, 136 Md. 623, 111 A. 114; *Owens v. Graetzel*, 149 Md. 689, 132 A. 265.

The question arises as to whether the mortgagee may make necessary repairs and expenditures connected with the properties. The statement of management filed in

these proceedings shows that the bulk of expenditures were applied to the payment of prior mortgages $2,040-.74, to taxes and water rents of $901.89, and to heat, light and plumbing $1,705.87, totaling approximately $4,648-.50, out of an entire expenditure of $5,836.54, leaving only a small balance of $1,188.04 for general repairs, papering, painting, re-leasing all of the eight apartments over a period of nineteen months from June 13, 1939, until February 5, 1941.

The specific complaint of appellee was that the rentals of the properties were not being applied toward liquidation of the first mortgages, and an attempt by the owners to place the property in trust and appellee was unable to have collection of rents turned over to himself caused him to make application to the court, and when the trustee was appointed it was not deemed a good time to sell the class of property conveyed by the mortgage, so with the permission of the court, he felt constrained to undertake rental of the properties in the hope that by such method a substantial reduction could be made in the mortgages, but by December 6, 1940, no such result having been obtained, he decided to expose the properties for sale. Appellee also relies upon *Booth v. Baltimore Steam Packet Co.*, 63 Md. 39, and *Owens v. Graetzel*, 149 Md. 689, 132 A. 265. In the former case, we said that by taking possession, the mortgagee assumed the duty of treating the property as the property owner would do, and for such proper or necessary repairs placed upon the property by the mortgagee, he was entitled to receive an allowance in settlement of his account, while in the latter case we observed that upon default under the terms of a mortgage in the payment of the ground rent upon the property, the mortgagee was entitled to the possession of the property and to collect the rents. Those authorities, when we consider that the lower court directed the trustee to apply the collections to the payment of the two first mortgages and the expenses of managing the properties, would seem to answer the contention in favor of the mortgagee being entitled to possession.

But in their answer to the petition for a decree in personam, the mortgagors seem to rely upon the contention that they were not consulted in regard to what repairs should be made to the properties which were covered by the mortgage, although in the twelfth paragraph of their answer to the petition, they state that they did not "oppose the appointment of a trustee * * *, and the authority of this court granted him to manage the properties, for the reason that they were deluded into the belief by the actions of the complainant, that such action was to the best advantage, benefit and profit of all concerned." From the testimony of Charles R. Neeb, one of the mortgagors, he learned promptly that Mr. Smith who had been collecting the rents for the mortgagors could no longer account to the witness for the money, because he turned it over to Mr. Kolker, Jr., for Mr. Fax. The witness further stated that he did not orally, in writing, or otherwise, at any time since June 13, 1939, agree with Fax, the trustee, or Kolker, the mortgagee, that he would be responsible for the items of expense shown in the trustee's report.

But whether appellants were or were not consulted in regard to the expenditures, although from their answer it is fair to assume that they knew the trustee was receiving the rents and making application thereof, it does not appear from the record that as trustee, Fax did any more than was necessary to enable him to secure tenants, because he testified that when one tenant moved out another one wanted something done before moving in, thus causing him not infrequently to expend sums of money in painting and making minor repairs to the apartments, plus the fact that with every change of a tenant he was compelled to pay a commission to get a new tenant. The commissions, plus the repairs referred to, plus the expenditures made by him to M. D. Kolker, made out most of the items in addition to those mentioned, so that we are unable to say that the mortgagee in possession or trustee, notwithstanding the property did not show any gain, is to be held accountable, because under an order of court he under the circumstances undertook the collection

of rents. He was under a duty of treating the property as a prudent owner would have treated it. More than that the excess of expenditures over the collections is $145.04, which sum the trustee allowed reducing the claim to $4,675.45, the exact amount due under the mortgage. It was for this exact amount that the decree in personam was entered in pursuance of Section 853 of the Baltimore City Charter and necessarily that item is one which the "mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt so remaining unpaid and unsatisfied by the proceeds of such sale or sales."

It is also insisted by appellee that the objections which we have considered cannot now be made after final ratification, nor can they be asserted in a defense to a motion for a deficiency decree. The record in this case shows that the report of sale was filed on December 6, 1940, and after publication of the order *nisi*, it was ratified on January 7, 1941, no cause to the contrary having been shown. It further shows that the auditor's report and account were filed February 6, 1941, and on the 18th day of the same month it was finally ratified and confirmed, no cause to the contrary having been shown, and no appeal having been taken from the order ratifying the account. We think under those circumstances that the failure to object to the audit or to take any appeal therefrom must be held decisive of the issue. *Marine Bank v. Heller*, 94 Md. 213, 50 A. 521; *Lindsay v. Kirk*, 95 Md. 50, 51 A. 960; *Girdwod v. Safe Deposit Co.*, 143 Md. 245, 122 A. 132; *Bletzer v. Cooksey*, 154 Md. 568, 141 A. 380; *Kirsner v. Cohen*, 171 Md. 687, 190 A. 520.

It follows, for the reasons stated, that we are of the opinion (1) that the trustee, notwithstanding the property did not show a gain, has not acted imprudently; (2) that the amount of the decree as entered comes directly within the terms of Section 853 of the Baltimore City Charter hereinbefore quoted; and (3) that regardless of these considerations the failure to take an appeal from

120

the ratification of the auditor's account filed herein now precludes appellants from raising questions which should there have been raised. The order appealed from must be affirmed.

*Order affirmed, with costs*